(8 App. Div. 107)

VAN WERT v. ST. PAUL FIRE & MARINE INS. CO.

(Supreme Court, Appellate Division, Third Department.  July 7, 1896.)

INSURANCE—CANCELLATION OF POLICY BY SURRENDER.

Where the insured, after repeated requests for payment of premiums, and failure to pay, surrendered the policy to the agent of the insurer without stating that she wished to retain it, and made no further claim to it until after the fire, the policy is thereby canceled. Putnam, J., dissenting, on the ground that the evidence did not show a surrender of the policy.

Appeal from trial term, Ulster county.

Action by Emma Van Wert against the St. Paul Fire & Marine Insurance Company to have the cancellation of an insurance policy set aside, and the policy delivered to plaintiff on payment of the premiums with interest, and to recover the amount of the policy.  There was judgment in favor of plaintiff, and defendant appeals.  Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

William D. Murray, for appellant.

P. & C. F. Cantine (Charles F. Cantine, of counsel), for respondent.

LANDON, J.  The plaintiff, after repeated requests for payment of the premium, and her neglect to pay, surrendered the policy to the agent of the defendant without protest, or any pretense that she wanted to retain it, and made no further claim to it until after the fire.  The legal effect of that surrender without reservation was to terminate the credit given her for the payment of the premium.  The company could, in the absence of any facts constituting an estoppel, terminate the credit at any time, and taking back the policy was explicit notice to her of such termination.  The credit terminated, the policy ceased to be operative.  The company did also in form cancel the policy.  But it was canceled by the act of surrender without reserve.  The five days' notice of intent to cancel has reference to a policy in force either by actual payment, or a still-continued credit for it. If—as I do not think—any of these questions were for the jury, we should then, in the exercise of our power of review of the facts, set the verdict aside, as against the clear weight of the evidence.

PARKER, P. J., and HERRICK and MERWIN, JJ., concur.

PUTNAM, J. (dissenting). On the 21st day of March, 1893, the defendant issued and delivered to the plaintiff a policy of insurance for the sum of $1,000 on her house in Sleightsburgh, N. Y., for the period of three years. Prepayment of the premium was waived, and it is conceded that the plaintiff's time to make such payment was extended by the defendant's agents to the last day of November, 1893. The house so insured was destroyed by fire on the 24th day of March, 1894. The premium, although repeatedly demanded, had not been paid. The agents of the defendant obtained possession of the policy some time in November, 1893, and retained it until the 1st of December, at which time they claim it was returned to the general agent of the defendant, marked "Canceled." The plaintiff in the complaint asked for a judgment setting aside the cancellation of said policy, reinstating it, and for a recovery against the defendant for the amount thereof. She obtained a judgment in the court below for the relief demanded.

It is a well-settled doctrine that prepayment of the premium on a policy of insurance may be waived by the insurance company or its authorized agents, and that such a waiver may be shown by direct proof that credit was given, or may be inferred from circumstances. Bodine v. Insurance Co., 51 N. Y. 117; Robinson v. Insurance Co., 18 Hun, 395; Hodge v. Insurance Co., 33 Hun, 583; Goit v. Insurance Co., 25 Barb. 189; Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Sheldon v. Insurance Co., 26 N. Y. 460; Washoe Tool Manuf'g Co. v. Hibernia Fire Ins. Co. of Ohio, 7 Hun, 74; Id., 66 N. Y. 613. In this case it was not denied that prepayment of the premium was expressly waived by the agents of the defendant, and that the plaintiff's time to pay the premium was extended, by consent of such agents, until the last day of November, 1893. It is clear from the evidence that the policy was in force during the month of November, 1893, and, if plaintiff's house had been destroyed by fire during that month, she would have been entitled to recover of the defendant the amount of the policy. The question arises whether the evidence given on the trial established the fact of the cancellation or surrender by the plaintiff of the policy in question on or before the 1st day of December, 1893, or before the occurrence of the fire by which the plaintiff's house was destroyed. The policy in question, having been delivered and become operative without payment of the premium, remained in force, unless canceled by the defendant, or surrendered by the consent of the plaintiff. It was for the defendant to show such surrender or cancellation. The defendant's case, as to the cancellation or surrender of the policy, rests entirely on the testimony of Schuyler Schultz, one of the firm of John L. Schultz & Son, the agents who issued the policy to the plaintiff. He testified as follows:

"I went up to West Hurley on the 6th of November, 1893, and asked Mrs. Van Wert for some part of the payments of the premiums due. She said it was impossible for her to do anything. I told her I would have to cancel

the policies, but as our account with the St. Paul Insurance Company did not go to the insurance company until the last day of the month, as was their custom, that I would hold the policies in our office until that day. If she came to our office in the meantime, and paid for the policies, they would be in full force and effect; if not, they would be canceled. Q. Did you make any memorandum on the policy when you got it from Mrs. Van Wert? A Yes, sir. Q. What is it? A. 'Canceled November 6th, 1893.' "

The defendant's case is not strengthened by the testimony of the witness Wilson, for the reason that after, as Wilson testified, he obtained the policy from the plaintiff, in September, and delivered it to the defendant's agents, it was returned to the plaintiff, and she was given more time in which to pay the premium. From the testimony of Schuyler Schultz, above quoted, it is clear that the cancellation indorsed on the policy on November 6th was unauthorized, because it was not shown that he had given the plaintiff five days' previous notice of his intention to cancel the policy, as required by its terms, and also because he extended plaintiff's time of payment of the premium until the last day of November, 1893. Probably the notice he testified he gave the plaintiff on November 6th, and the indorsement then made on the policy, were sufficient to effect its cancellation after the last day of November, 1893. Van Wert v. Insurance Co., 90 Hun, 465, 36 N. Y. Supp. 54. But the testimony of Schuyler Schultz as to the conversation and transaction of November 6th is positively denied by the plaintiff. She says:

"I have heard the testimony of Schuyler Schultz. He did not see me at my house November 6th, and demand of me payment of the premiums upon the policies, and notify me that, if they were not paid on or before December 1st, that they would be canceled. I am quite positive of that."

And she says that the policy was obtained from her on the 25th day of November by Wilson, the clerk of John L. Schultz & Son; that at that time Wilson asked to see the policy, and, when produced, put it in his pocket and took it away. Her statement of the transaction does not differ materially from that given by Wilson, except as to the time. Again, Frederick S. Van Wert, the husband of the plaintiff, testified to a conversation with Schuyler Schultz in the latter part of December, 1893, after it was claimed the policy had been returned to the general agent of the defendant, canceled, in which Schuyler Schultz requested payment of the premium on the policy in question, and spoke of it as being in his safe, and safer there than with the witness. This testimony tended to contradict that of Schuyler Schultz, and to show that the policy in question had not then been surrendered or canceled. We have, then, a case where a policy of insurance had been issued, delivered, and become operative. The question was, had it been canceled or surrendered? As we have seen, it was for the defendant to show such cancellation or surrender. Its case rested on the testimony of one witness, and the possession of the policy. But this testimony of this witness was positively denied by the plaintiff, and her testimony is to the effect that there was no voluntary surrender or delivery of the policy in question to the defendant's agents. Another witness (Frederick S. Van

Wert) testified to a conversation with Schultz in the latter part of December, 1893, inconsistent with his statement as to the surrender or cancellation of the policy. While the jury, on the evidence in the case, could have found in favor of the defendant, I think the preponderance of the evidence in favor of the latter was not so great as to authorize this court to grant a new trial. It was suggested by the learned judge who delivered the opinion in Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901, that where, upon a trial, "there is a vast preponderance in the evidence in favor of defendant," the general term should "exercise an independent judgment, and grant a new trial on the ground that the verdict is against the weight of evidence." The learned judge might, I think, properly have said that where there is a clear, decided, preponderance of evidence in favor of the defeated party, the general term should reverse on the facts. On the trial in this case, as appears from the foregoing statement of the testimony, there was no such preponderance of the evidence in favor of either party. A fair question of fact, on the conflicting testimony, was raised, which was properly submitted to the jury, and hence the verdict cannot be disturbed by this court. I think that none of the exceptions taken by the defendant during the trial require discussion, or a reversal of the judgment. The judgment should be affirmed, with costs.